UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIANA GONZALEZ SALAZAR,<br><br>                                    Petitioner,<br><br>v.<br><br>JEREMY CASEY, Warden at Imperial Regional Detention Center, Imperial, California, et al.,<br><br>                                    Respondents. | Case No.:  25-CV-2784 JLS (VET)<br><br>**ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS**<br><br>(ECF No. 1) |

Presently before the Court is Petitioner Adriana Gonzalez Salazar's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Pet.," ECF No. 1). Also before the Court is Respondents Jeremy Casey's (Warden at Imperial Regional Detention Center, Imperial, California); Joseph Freden's (Field Office Director of San Diego Office of Detention and Removal, U.S. Immigrations and Customs Enforcement); Todd Lyons's (Acting Director, U.S. Immigration and Customs Enforcement); Kristi Noem's (Secretary, U.S. Department of Homeland Security); and Pamela Bondi's (U.S. Attorney General) (collectively, "Respondents") Return to Habeas Petition ("Ret.," ECF No. 5) and Petitioner's Traverse ("Traverse," ECF No. 7). For the reasons set forth below, the Court **GRANTS IN PART** Petitioner's Petition for Writ of Habeas Corpus.

/ / /

1

**BACKGROUND**

Petitioner is a nineteen-year-old citizen and national of Venezuela. Pet. ¶ 19. Petitioner holds and has expressed political opinions against the Maduro regime and fled Venezuela when she and her family "received in person death threats against them by members of the 'colectivos.'" *Id.* ¶ 21. On July 16, 2024, Petitioner and members of her family arrived at the San Ysidro Port of Entry and were inspected in an appointment made through the CBPOne Application.[1]  *Id.* ¶ 22. Petitioner was deemed inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I),[2] placed in removal proceedings under 8 U.S.C. § 1229(a) (240 proceedings), and issued a Notice to Appear (NTA). Ret. at 2. Petitioner and her family members were then released from Department of Homeland Security (DHS) custody on humanitarian parole pursuant to 8 U.S.C. § 1182(d)(5)(A) and issued a Form I-94, which was valid for two years. Pet. ¶ 22; Ret. at 2.

On April 11, 2025, Petitioner's family member received a "mass form email" from DHS stating that the Petitioner and her family's parole would be terminated within seven days. Pet. ¶ 23. This email provided no reason for the termination and instructed them to "depart the U.S. 'immediately.'" *Id.* Petitioner attended her only court hearing on September 29, 2025. *Id.* ¶ 24. On October 16, 2025, responding to a "call-in letter" from ICE directing her to come to the downtown San Diego ICE office, Petitioner was arrested and served with a Form I-200, Warrant for Arrest of Alien to be remanded back into custody. *Id.*; Ret. at 3. Petitioner is currently detained pursuant to 8 U.S.C. § 1225(b)(2) at the Imperial Regional Detention Facility in Imperial County, California. Ret. at 3.

Petitioner attended her scheduled court hearing, complied with all terms of her parole, and has no criminal history. Pet. ¶ 24. Petitioner alleges that there is no indication

---

[1] The Government contends that Petitioner was paroled via the CHNV parole program which was terminated on March 25, 2025. Ret. at 2–3. However, Form I-213 provided by Respondents states, "Subject claimed asylum and was processed under CBP One Processing." Ret. Ex-1 at 3.

[2] 8 U.S.C. § 1182(a)(7)(A)(i)(I) designates as inadmissible entrants who are not in possession of a valid entry document.

25-CV-2784 JLS (VET)

1  that she is a danger to the community or a flight risk.  *Id.* ¶ 25.  Petitioner challenges the

2  revocation of her parole without first being provided a due process hearing and her

3  continued detention.  *Id.* ¶¶ 4–5.

4         On October 20, 2025, Petitioner filed her Petition for Writ of Habeas Corpus arguing

5  her summary revocation of parole fails to follow the procedural requirements of 8 C.F.R.

6  § 212.5(e)(2)(i), the Due Process Clause of the Fifth Amendment, and the Administrative

7  Procedure Act (APA).  *See generally* Pet.  Specifically, Petitioner requests the Court (1)

8  assume jurisdiction over this matter; (2) declare that Petitioner's detention violates the Due

9  Process Clause; (3) declare that Petitioner's parole was not lawfully terminated, her parole

10 remains active, and she is unlawfully detained; (4) grant the instant petition and release

11 Petitioner; (5) alternatively, grant an individualized bond hearing; (6) issue an order

12 prohibiting Respondents from transferring Petitioner from the district without the Court's

13 approval; and (7) award Petitioner attorney's fees and costs under the Equal Access to

14 Justice Act and on any other basis justified under law.  *Id.*

**LEGAL STANDARD**

16       A federal prisoner challenging the execution of his or her sentence, rather than the

17 legality of the sentence itself, may file a petition for writ of habeas corpus in the district of

18 his confinement pursuant to 28 U.S.C. § 2241.  *See* 28 U.S.C. § 2241(a).  The sole judicial

19 body able to review challenges to final orders of deportation, exclusion, or removal is the

20 court of appeals.  *See generally* 8 U.S.C. § 1252; *see also Alvarez–Barajas v. Gonzales*,

21 418 F.3d 1050, 1052 (9th Cir. 2005) (citing REAL ID Act, Pub. L. No. 109-13, 119 Stat.

22 231, § 106(a)).  However, for claims challenging ancillary or collateral issues arising

23 independently from the removal process—for example, a claim of indefinite detention—

24 federal habeas corpus jurisdiction remains in the district court.  *Nadarajah v. Gonzales*,

25 443 F.3d 1069, 1076 (9th Cir. 2006), *abrogated on other grounds by Jennings v. Rodriguez*,

26 583 U.S. 281 (2018); *Alvarez v. Sessions*, 338 F. Supp. 3d 1042, 1048–49 (N.D. Cal. 2018)

27 (citations omitted).

28 / / /

25-CV-2784 JLS (VET)

**DISCUSSION**

Respondents first argue that this Court lacks jurisdiction under 8 U.S.C. § 1225(g) and § 1225 (b)(9).  Ret. at 3–6.  Respondents then argue, if the Court finds jurisdiction, that Petitioner's claims fail on the merits because Petitioner is subject to mandatory detention under 8 U.S.C. § 1225.  *Id.* at 6–9.  Petitioner argues that her summary revocation of parole and continued detention violates Due Process and the APA.  Pet. at ¶ 3.

**I.    Jurisdiction**

Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."  8 U.S.C. § 1252(g).  Respondents claim that "Petitioner's claims necessarily arise from the decision or action by the Attorney General to commence proceedings and adjudicate cases."  Ret. at 4 (simplified).  The Court disagrees.

Section 1252(g) should be read "narrowly" as to apply "only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'"  *Ibarra-Perez v. United States*, No. 24-631, 2025 WL 2461663, at *6 (9th Cir. Aug. 27, 2025) (quoting *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 482, 487 (1999)).  Section 1252(g) "does not prohibit challenges to unlawful practices merely because they are in some fashion connected to removal orders."  *Id.* at *7.  Section 1252(g) does not bar due process claims.  *Walters v. Reno*, 145 F.3d 1032, 1052–53 (9th Cir. 1998) (finding that the petitioners' objective was not to review the merits of their proceeding, but rather "to enforce their constitutional rights to due process in the context of those proceedings").

Here, Petitioner does not challenge the decision to commence removal proceedings or any act to adjudicate or execute a removal order.  Traverse at 1.  Rather, Petitioner is challenging the legality of her parole revocation, alleged wrongful arrest, and continued detention.  *Id.* at 1–2.  Petitioner is enforcing her "constitutional rights to due process in the context of the removal proceedings—*not* the legitimacy of the removal proceedings or

1   any removal order." *Garcia v. Noem*, No. 25-CV-2180-DMS-MMP, 2025 WL 2549431,

2   at *4 (S.D. Cal. Sept. 3, 2025). Therefore, § 1252(g) does not strip the Court of jurisdiction.

3   *See, e.g.*, *Navarro Sanchez v. Larose et al.*, 25-cv-2396 JES (MMP), 2025 WL 2770629,

4   at *2 (S.D. Cal. Sept. 26, 2025) (finding the Court had jurisdiction in a similar matter);

5   *Noori v. Larose et al.*, 25-cv-1824 GPC (MSB), 2025 WL 2800149, at *7–8 (S.D. Cal. Oct.

6   1, 2025) (same).

7          Section 1252(b)(9) provides that "[j]udicial review of all questions of law and fact,

8   including interpretation and application of constitutional and statutory provisions, *arising*

9   *from any action taken or proceeding brought to remove an alien from the United States*

10  under this subchapter shall be available only in judicial review of a final order under this

11  section." 8 U.S.C. § 1252(b)(9) (emphasis added). Respondents argue that the Court lacks

12  jurisdiction under § 1252(b)(9) because "[t]hese provisions divest district courts of

13  jurisdiction to review both direct and indirect challenges to removal orders, including

14  decisions to detain for purposes of removal or for proceedings." Ret. at 6 (citing *Jennings*,

15  583 U.S. 294–95). Again, the Court disagrees.

16         Section 1252(b)(9) "has built-in limits, specifically, claims that are independent of

17  or collateral to the removal process do not fall within the scope" of § 1252(b)(9).

18  *Gonzalez v. United States Immigration and Customs Enforcement*, 975 F.3d 788, 810 (9th

19  Cir. 2020) (citing *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1032 (9th Cir. 2016) (internal

20  quotation marks omitted)). "[C]laims challenging the legality of detention pursuant to an

21  immigration detainer are independent of the removal process." *Id.*; *see also Garcia*, 2025

22  WL 2549431, at *3–4; *Nielson v. Preap*, 586 U.S. 392, 402 (2019) (quoting *Jennings*, 583

23  U.S. at 294) (finding § 1252(b)(9) did not strip the court of jurisdiction because the

24  petitioners were "not asking for review of an order of removal; they [were] not challenging

25  the decision to detain them in the first place or to seek removal (as opposed to decision to

26  deny them bond hearings); and they [were] not even challenging any part of the process by

27  which their removability w[ould] be determined").

28

25-CV-2784 JLS (VET)

Here, as discussed above, Petitioner is not challenging the Department of Homeland Security's decision to commence removal proceedings or to adjudicate removability. *See* Traverse at 3. Petitioner is instead challenging the "the Respondents' wrongful arrest and detention of [Petitioner] given her status and due process rights as a parolee." *Id.* Therefore, § 1252(b)(9) also does not strip the Court of jurisdiction.

## II.    Merits

### A. Due Process

Petitioner argues that the summary revocation of her parole without justification or consideration of her individualized circumstances violates the Due Process Clause. Pet. ¶ 43. The Court agrees.

The Fifth Amendment guarantees that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (9th Cir. 2001). "[I]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). The Due Process Clause generally "requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, No. 25-cv-5632-PCP, 2025 WL 2084921, at *3 (N.D. Cal. July 25, 2025) (citations omitted). Although the initial decision to detain or release an individual may be within the government's discretion, "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[] to live up to the . . . conditions [of release].'" *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). "Thus, even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected

25-CV-2784 JLS (VET)

liberty interest in remaining out of custody." *Pinchi*, 2025 WL 2084921, at *3 (citing *Romero v. Kaiser*, No. 22-cv-20508, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022)).

Respondents contend that as an "applicant for admission" under 8 U.S.C. § 1225 Petitioner is subject to mandatory detention and therefore her alleged statutory and constitutional violations fail.[3]  Ret. at 6.  The Court disagrees.  Petitioner has been granted humanitarian parole subject to a Form I-94, granting her parole for two years.  Pet. ¶ 22.  Petitioner is not a newly arrived noncitizen seeking admission at the border, as Petitioner has been in the United States since July 2024.  *Id.*  Upon arrival, she was determined to not be a danger to the community or a flight risk and has attended her court hearings.  Pet. ¶¶ 24–25.  She lives with her aunt, brother, and cousin who all fled Venezuela together, and had a mental health intake appointment scheduled for October 21, 2025, to start therapy, which she was unable to attend due to her detention.  *Id.* ¶ 26.  Petitioner also has a hearing scheduled in the San Diego probate court to have her aunt be appointed her legal guardian, a predicate order to the Form I-360 Special immigrant Juvenile visa.  *Id.* ¶ 27.  Petitioner is not merely an "applicant for admission" at the border with minimal due process rights; Petitioner has a protected liberty interest in remaining out of custody.  *See, e.g.*, *Pinchi*, 2025 WL 2084921, at *4 ("[Petitioner's] release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community, and [Petitioner] has a strong interest in remaining at liberty unless she no longer meets those criteria."); *Noori*, 2025 WL 2800149, at *10 ("Petitioner is not an 'arriving' noncitizen but one that has [been] present in our country for over a year.  This substantial amount of time indicates he is afforded the Fifth Amendment's guaranteed

---

[3] Respondent's argument that Petitioner is bound by *Doe v. Noem*, 152 F.4th 727 (1st Cir. 2025) is unfounded because, as Respondent's Exhibit demonstrates, Petitioner is not a member of the CHNV parole program, but rather the CPBOne program.  Ret. Ex-1 at 3 ("Subject claimed asylum and was processed under CBP One processing.").  Further, if Respondents unlawfully terminated Petitioner's parole, which the Court finds to be so, then the Court need not address whether Petitioner is subject to mandatory detention under § 1225(b), as Respondents cannot detain her without first properly revoking her parole.  *See Y-Z-L-H v. Bostock*, No. 25-cv-965-SI, 2025 WL 1898025, at *11 (D. Or. July 9, 2025).

25-CV-2784 JLS (VET)

1    due process before removal."); *Matute v. Wofford*, No. 25-cv-1206-KES-SKO (HC), 2025

2    WL 2817795, at \*5 (E.D. Cal. Oct. 3, 2025) (finding petitioner had a protected liberty

3    interest in his release).

4        As Petitioner has a protected liberty interest, the Due Process Clause requires

5    procedural protections before she can be deprived of that interest.  *See Matthews v.*

6    *Eldridge*, 424 U.S. 319, 335 (1976).  To determine which procedures are constitutionally

7    sufficient to satisfy the Due Process Clause, the Court must apply the *Matthews* factors.

8    *See Matthews*, 424 U.S. at 335.  Courts must consider:

9    
10    
11    
12    
13
> (1) "the private interest that will be affected by the official
> action"; (2) "the risk of an erroneous deprivation of such interest
> through the procedures used, and the probable value, if any, of
> additional or substitute procedural safeguards"; and (3) "the
> Government's interest including the function involved and the
> fiscal and administrative burdens that the additional or substitute
> procedural requirement would entail."

14    *Id.*

15        The Court finds that all three factors support a finding that the Government's

16    revocation of Petitioner's parole without notification, reasoning, or an opportunity to be

17    heard, denied Petitioner of her due process rights.  First, as discussed above, Petitioner has

18    a significant liberty interest in remaining out of custody pursuant to her humanitarian

19    parole.  "Freedom from imprisonment—from government custody, detention, or other

20    forms of physical restraint—lies at the heart of the liberty [the Due Process Clause]

21    protects."  *Zadvydas*, 533 U.S. at 690.  Petitioner has an interest in remaining with her

22    family, seeking counseling, and attending hearings to seek a visa.  *See Morrissey*, 408 U.S.

23    471 at 482 ("Subject to the conditions of [her] parole, [she] can be gainfully employed and

24    is free to be with family and friends and to form the other enduring attachments of normal

25    life.").

26        Second, the risk of an erroneous deprivation of such interest is high as Petitioner's

27    parole was revoked without providing her a reason for revocation or giving her an

28    opportunity to be heard.  Pet. ¶ 24.  Since DHS's initial determination that Petitioner should

be paroled because she posed no danger to the community and was not a flight risk, there is no evidence that these findings have changed. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1760 (N.D. Cal. 2017) ("Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."). Petitioner has no criminal record, has not been arrested or otherwise in criminal trouble, has been seeking out therapy for her "severe panic disorder (with agoraphobia), severe major depressive disorder, severe Post-Traumatic Stress Disorder (PTSD), and psychogenic seizures," and is working towards her aunt becoming her legal guardian. Pet ¶¶ 25–27. "Once a noncitizen has been released, the law prohibits federal agents from rearresting [her] merely because [she] is subject to removal proceedings. Rather, the federal agents must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk. . . ." *Saravia*, 280 F. Supp. 3d at 1760. Respondents, failing to address Petitioner's Due Process argument in their response, do not point to any material circumstances that have changed that would warrant reconsideration of her parole. *See generally* Ret. "Where as here, 'the petitioner has not received any bond or custody hearing,' 'the risk of an erroneous deprivation of liberty is high' because neither the government nor [Petitioner] has had an opportunity to determine whether there is any valid basis for her detention." *Pinchi*, 2025 WL 2084921, at *5 (quoting *Singh v. Andrews*, No. 25-cv-801-KES-SKO (HC), 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025)) (cleaned up).

Third, the Government's interest in detaining Petitioner without notice, reasoning, and a hearing is "low." *See Pinchi*, 2025 WL 2084921, at *5; *Matute*, 2025 WL 2817795, at *6; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019) ("If the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). Respondents fail to point to any burdens on the Government if it were to have provided proper notice, reasoning, and a pre-deprivation hearing. *See generally* Ret.

25-CV-2784 JLS (VET)

1  Therefore, because Respondents detained Petitioner by revoking her parole in

2  violation of the Due Process Clause, her detention is unlawful. *See, e.g.*, *Alegria Palma v.*

3  *Larose et al.*, No. 25-cv-1942 BJC (MMP), slip op. 14 (S.D. Cal. Aug. 11, 2025) (granting

4  a TRO based on a procedural due process challenge to a revocation of parole without a pre-

5  deprivation hearing); *Navarro Sanchez*, 2025 WL 2770629, at *5 (granting a writ of habeas

6  corpus releasing petitioner from custody to the conditions of her preexisting parole on due

7  process grounds).

8  ***b. Other Grounds for Release***

9  The Court need not address Petitioner's claim arising under the APA because the

10  Petition can be resolved on due process grounds.  However, the Court notes that other

11  courts have found violations of the APA based on similar grounds.  *See, e.g.*, *Navarro*

12  *Sanchez*, 2025 WL 2770629, at *4 (finding revocation of petitioner's parole arbitrary and

13  capricious because respondents did not state any reasons for the revocation); *Noori*, 2025

14  WL 2800149, at *3 ("Petitioner's parole was revoked without an individualized

15  determination or provided reasoning, which violated the APA.").

16  Further, the summary revocation of Petitioner's parole failed to follow the statutory

17  requirements defined in 8 C.F.R. § 212.5(e)(2)(i).  The Secretary of DHS may "parole [an

18  arriving asylum seeker] into the United States temporarily . . . on a case-by-case basis for

19  urgent humanitarian reasons or significant public benefit."  8 U.S.C § 1182(d)(5)(A).  This

20  parole can only be terminated, beyond the authorized time expiring, "upon accomplishment

21  of the purpose for which parole was authorized or . . . [if] neither humanitarian reasons nor

22  public benefit warrants the continued presence of the alien in the United States."  8 C.F.R.

23  § 212.5(e)(2)(i).  This parole can only be "terminated upon written notice."  *Id.*

24  Here, Petitioner's cousin was sent a "mass form email" stating that Petitioner's

25  cousin's parole (and that of Petitioner and her family) would be terminated in seven days.

26  Pet. ¶ 23.  Other courts in this district have found that a generic notification of this kind is

27  insufficient to fulfill the written notice requirement.  *See Mendez Los Santos v. Larose et*

28  *al.*, No. 25-cv-2216 TWR (MSB), ECF No. 14 (S.D. Cal. Sept. 4, 2025) (finding in a minute

order that "[p]etitioner was not provided with written notice that her parole had been terminated, as required by 8 C.F.R. § 212.5(e)(2)(i)" when "[p]etitioner was sent a form letter by [DHS] stating that her parole would be terminated within [seven] days"); *Noori*, 2025 WL 2800149, at *2 (finding petitioner was not provided written notice of parole revocation when "[p]etitioner received a message through a mass, generic notification system, indicating [r]espondents were revoking his parole"). Rather, Respondents were also required to make a finding that "Petitioner's parole had served its purpose, that humanitarian reasons do not warrant Petitioner's presence in the country, or that [s]he is a danger to the public or a flight risk." *Y-Z-L-H v. Bostock*, No. 25-cv-965-SI, 2025 WL 1898025, at *13 (D. Or. July 9, 2025).

Therefore, this Petition can also be granted on grounds of violating the APA and failure to provide Petitioner with notice that her parole was revoked as required by 8 C.F.R. § 212.5(e)(2)(i).

### c. Attorney's Fees

Petitioner has requested costs and attorney's fees in this action pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. Pet. at 18. The EAJA provides in part:

> A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney . . . representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed. The party shall also allege that the position of the United States was not substantially justified. Whether or not the position of the United States was substantially justified shall be determined on the basis of the record . . . which is made in the civil action for which fees and other expenses are sought.

28 U.S.C. § 2412(d)(1)(B).

The Court will consider an application requesting reasonable fees and costs under the EAJA that is filed within thirty days of the judgment.

25-CV-2784 JLS (VET)

**CONCLUSION**

Based on the foregoing, the Court **GRANTS** in part Petitioner's Petition for Writ of Habeas Corpus (ECF No. 1), and **ORDERS** Respondents to immediately release Petitioner from custody subject to the conditions of her preexisting parole and Form I-94. The Court **ORDERS**, prior to any re-detention of Petitioner, that Petitioner is entitled to notice of the reasons for revocation of her parole and a hearing before a neutral decision maker to determine whether detention is warranted. The Government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight.[4] The Parties are **ORDERED** to file a Joint Status Report by November 14, 2025, confirming that Petitioner has been released. Lastly, Petitioner's attorney is directed to submit an attorney fee application and corresponding billing records within thirty (30) days of this Order, and Respondents are instructed to file any opposition within fourteen (14) days of Petitioner's attorney fee application.

**IT IS SO ORDERED.**

Dated: November 3, 2025

Hon. Janis L. Sammartino
United States District Judge

---

[4] This relief has been granted in similar matters. *See, e.g., Matute*, 2025 WL 2817795, at *8; *Pinchi*, 2025 WL 2084921, at *5; *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1097 (E.D. Cal. 2025); *Martinez Hernandez v. Andrews*, No. 25-CV-1035 JLT HBK, 2025 WL 2495767, at *14 (E.D. Cal. Aug. 28, 2025).

25-CV-2784 JLS (VET)